UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

PINES NURSING HOME (77), INC., a
Florida corporation, d/b/a PINES NURSING
HOME, individually, and on behalf of all others
similarly situated,

      Plaintiff,

vs.

PHARMERICA CORPORATION,

      Defendant.
_____/

CLASS ACTION

**COMPLAINT FOR VIOLATIONS OF THE JUNK FAX PREVENTION ACT
(47 U.S.C. § 227 AND 47 C.F.R. § 64.1200); DEMAND FOR JURY TRIAL**

Plaintiff Pines Nursing Home (77), Inc., d/b/a Pines Nursing Home ("Plaintiff"), on behalf of itself and all others similarly situated, hereby sues defendant Pharmerica Corporation ("Defendant"), and avers:

### Introduction

1.      More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") was enacted into law.  The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes.  The law prohibited the transmission of facsimile advertising without the prior permission of the recipient.  Despite its passage, consumers and businesses continued to be besieged with junk faxes.  In 2005 Congress responded by strengthening the law through the Junk Fax

Prevention Act of 2005 ("JFPA" or the "Act").[1]  As amended, the Act requires an advertiser to include on its faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future faxes and explains how to exercise that right.

2.      Plaintiff brings this class action to recover damages for and to enjoin junk faxing by Defendant in violation of the JFPA and the regulations of the Federal Communications Commission ("FCC") promulgated under the JFPA.  Defendant has, commencing within four years preceding the filing of this action, blasted junk faxes in violation of the JFPA and FCC regulations.[2]  Defendant's violations include, but are not limited to, the facsimile transmission of an advertisement on February 28, 2011, to Plaintiff's telephone facsimile machine via Plaintiff's facsimile telephone number, a true and correct copy of which advertisement is attached as Exhibit 1.

3.      **Jurisdiction, Standing and Venue**.  This Court has subject matter jurisdiction over this matter by operation of 28 U.S.C. § 1331 because this action arises under the laws of the United States.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747, 1818 L. Ed. 2d 881 (2012).  Plaintiff has standing to seek relief in this Court because § (b)(3) of the Act authorizes commencement of an action to obtain statutory damages in the minimum amount of $500 for each violation of the JFPA and/or FCC regulations, to obtain injunctive relief, or for both such actions.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant sent fax advertisements in violation of the JFPA and FCC regulations to this judicial district, including to Plaintiff.

---

[1]     Unless otherwise noted, all statutory references are to this statute.
[2]     The statute of limitations for this action is the four-year limitations period provided in 28 U.S.C. § 1658.

## The Parties

4.  **Individual Plaintiff/Class Representative**.  Plaintiff is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of Florida, doing business as Pines Nursing Home within this judicial district.  Plaintiff is, and at all times relevant hereto was, the subscriber of the telephone number (305-893-2519) to which junk faxes, including Exhibit 1, were sent by Defendant.

5.  **Defendant PharMerica Corporation**.  Plaintiff is informed and believes, and upon such information and belief avers, that Defendant is, and at all times relevant hereto was, a corporation organized and existing under the laws of Delaware and having its principal place of business in Louisville, Kentucky.

## The JFPA's Prohibition Against Junk Faxing

6.  By the early 1990s advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements.  This practice imposed tremendous disruption, annoyance and cost on American consumers and businesses.  Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate faxes from junk faxes, and to discard the latter.  Congress responded to the problem by passing the TCPA.  The law was enacted to eradicate "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'"  H.R. Rep. No. 102-317 (1991).

7.  In the decade following the law's enactment, however, American consumers and businesses continued to be "besieged" by junk faxes because advertisers refused to honor requests

by recipients to stop. FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003). Congress responded by strengthening the law through the JFPA. The JFPA, for the first time, required advertisers to disclose in their faxes that recipients have the right to stop future faxes and to explain how they can exercise that right (hereinafter collectively the "Opt-Out Notice Requirements"). § (b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vi).

### Defendant's Junk Fax Program

8.      Plaintiff is informed and believes, and upon such information and belief avers, that the faxes at issue, including Exhibit 1, were designed as, intended as, and constituted advertisements under the JFPA within the four corners of such faxes and as part of Defendant's overall marketing and promotional activities.

9.      Plaintiff did not give Defendant prior express invitation or permission as defined in the JFPA (§ (a)(5)) to send Exhibit 1 or any other junk faxes. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant blasted Exhibit 1 and other junk faxes without obtaining prior express invitation or permission from other recipients. In sending these faxes, Defendant also failed to include the disclosures required by the Opt-Out Notice Requirements, in further violation of the JFPA and FCC regulations.

### Class Action Allegations

10.     **Statutory Reference**. This action is properly maintainable as a class action because (a) all prerequisites of rule 23(a) are satisfied; (b) prosecution of separate actions by one or more individual members of the class would create a risk of inconsistent or varying

adjudications with respect to individual members of the class and would establish incompatible standards of conduct for Defendant, in the manner contemplated by rule 23(b)(1)(A); (c) Defendant has acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole, as contemplated by rule 23(b)(2); and (d) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, if any, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, as contemplated by rule 23(b)(3).

11. **Class Definition**. The Plaintiff Class consists of all persons and entities that were at the time subscribers of telephone numbers to which a facsimile transmission was sent, commencing within four years preceding the filing of this action, which facsimile transmission discusses, describes, or promotes any of Defendant's property, goods or services, including, without limitation, Exhibit 1 to this Complaint ("Plaintiff Class"). Plaintiff reserves the right to amend the class definition following completion of class certification discovery.

12. **Class Size/Impracticality of Joinder**. Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is sufficiently numerous such that joinder of all members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with joinder in the litigation on an individual basis.

13. **Typicality**. The claims of Plaintiff are typical of the Plaintiff Class as they were sent junk faxes by Defendant, have claims under the same statute and are entitled to the same statutory damages.

14. **Adequacy of Representation**. The Plaintiff Class will be well represented by Plaintiff and Plaintiff's counsel. Plaintiff appreciates the responsibilities of a class representative and understands the nature and significance of the claims made in this case. Plaintiff can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between its interests and the interests of other class members. Proposed class counsel has the necessary resources, experience (including extensive experience in litigating claims under the JFPA) and ability to prosecute this case on a class action basis.

15. **Common Questions of Law and Fact Are Predominant**. Questions of law and fact common to the class predominate over questions affecting only individual class members.

A. **Common Questions of Fact**. This case presents numerous questions of fact that are common to all class members claims. Plaintiff is informed and believes, and upon such information and belief avers, that the case arises out of a common nucleus of facts and that Defendant has engaged in the same general course of conduct vis-à-vis class members, and all class members' damages arise out of that conduct.

B. **Common Questions of Law**. The case presents numerous common questions of law, including, but not limited to:

(1) whether the faxes at issue are advertisements within the ambit of the JFPA and FCC regulations;

(2) Defendant's mode and method of obtaining the telephone numbers to which the junk faxes were sent and whether that mode and method complied with the requirements of § (b)(1)(C)(ii) and FCC regulations;

    (3)  whether Defendant complied with the Opt-Out Notice Requirements of the JFPA and FCC regulations, and the legal consequences of the failure to comply with those requirements;

    (4)  what constitutes a knowing or willful violation of the JFPA within the meaning of § (b)(3);

    (5)  whether Defendant committed knowing and/or willful violations of the JFPA and/or FCC regulations;

    (6)  whether damages should be increased on account of Defendant's knowing and/or willful violations of the Act and/or FCC regulations and, if so, by what amount; and

    (7)  whether injunctive relief as prayed for in the Complaint should be entered.

  16.  **Injunctive Relief Is Appropriate**.  Defendant has acted, and continues to act, on grounds that apply generally to the Plaintiff Class, so that injunctive relief is appropriate with respect to the Plaintiff Class as a whole.

  17.  **Superiority of Class Adjudication**.  The action should be maintained as a class action because a class action is superior to other available methods for the fair and efficient adjudication of the controversy:

    A.  Common questions of law and fact, including those identified in paragraph 15, predominate over questions affecting only individual members.

    B.  Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of

conduct for Defendant.

      C.      Proof of the claims of Plaintiff will also prove the claims of the Plaintiff Class without the need for separate or individualized proceedings and the statutory damages provided for in the JFPA are the same for all members of the Plaintiff Class, such that damages can be calculated with mathematical certainty.

      D.      Defendant has acted pursuant to common policies and practices in the same or similar manner with respect to all members of the Plaintiff Class.

      E.      Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings in the event individual cases are brought.

      F.      Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action.  Because the statutory minimum damage is $500 per violation and the Act contains no provision authorizing an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendant's violations of the Act and FCC regulations would be grossly uneconomical.  As a practical matter, the claims of the vast majority of the Plaintiff Class are not likely to be redressed absent certification.

      G.      Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to this action and, hence, subject to an order spreading the costs of litigation among the class members in relationship to the benefits received.

18.     **Notice**.  Plaintiff contemplates that notice be provided to all class members that can be identified through reasonable effort.  Rule 23 requires, and the notice will concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues and defenses; that a class member may enter an appearance through counsel if the member so desires; if the class is certified under rule 23(b)(3), that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under rule 23(c)(3).

**Claim for Relief for Violations of the JFPA and FCC Regulations**

19.     Plaintiff and the Plaintiff Class reassert the averments set forth in paragraphs 1 through 18, above.

20.     **Defendant's Violations of the Act and FCC Regulations**.  Commencing within four years preceding the filing of this action, including, without limitation, on February 28, 2011, Defendant violated the JFPA and FCC regulations by, among other things, sending unsolicited advertisements and/or advertisements that violate the Opt-Out Notice Requirements from telephone facsimile machines, computers, or other devices to telephone facsimile machines of Plaintiff and members of the Plaintiff Class, within the United States.

21.     **Sender**.  Defendant is a sender of the junk faxes at issue because the faxes were sent on its behalf and because the faxes advertised or promoted Defendant's goods and services.

22.     **Private Right of Action**.  Under § (b)(3), Plaintiff has a private right of action to bring this claim for damages and injunctive relief on behalf of itself and on behalf of the Plaintiff

Class to redress Defendant's violations of the Act and FCC regulations.

23.     **Injunctive Relief**.  Plaintiff is entitled to have preliminary and permanent injunctions issue to: (1) prohibit Defendant, its employees, agents, representatives, contractors,

24.     affiliates and all persons and entities acting in concert with it, from committing further violations of the Act and FCC regulations, and thereby, among other things, prohibiting Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from sending any unsolicited advertisements via facsimile to any person or entity, or sending any advertisements via facsimile that do not comply with the Opt-Out Notice Requirements to any person or entity; (2) require Defendant to deliver to Plaintiff all records of facsimile advertisements sent commencing within four years preceding the filing of this action, including all content sent via facsimile, fax lists, and transmission records; (3) require Defendant to adopt ongoing educational, training and monitoring programs to ensure compliance with the JFPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendant to provide written notice to all persons and entities to whom Defendant sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such persons and entities that the faxing of unsolicited advertisements or advertisements that do not comply with the Opt-Out Notice Requirements violates the JFPA and that they should not be led or encouraged in any way by Defendant's violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require Defendant to place conspicuously on the homepage of its websites the warnings contained in subsection 4 of this paragraph.

25.     **Damages**.  Plaintiff and members of the Plaintiff Class are entitled to recover statutory damages in the minimum amount of $500 for each violation by Defendant of the JFPA and/or FCC regulations, as expressly authorized by § (b)(3)(B).  In addition, Plaintiff is informed and believes, and upon such information and belief avers, that Defendant committed its violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, also as authorized by § (b)(3)(B).

**Prayer for Relief**

WHEREFORE, Plaintiff and the Plaintiff Class pray for judgment against Defendant:

1.      Certifying a class described in paragraph 11 of this Complaint;

2.      Appointing Plaintiff as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

3.      Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

4.      Awarding of statutory damages in the minimum amount of $500 for each violation of the Act and/or FCC regulations and the trebling of such statutory damages, in an amount not less than $1,000,000, exclusive of interest and costs, according to proof;

5.      Entering the preliminary and permanent injunctions requested in paragraph 23 of this Complaint;

6.      Ordering payment of Plaintiff's costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

7.      Awarding pre-judgment interest;

8.      Awarding such other and further relief as the Court shall deem just and proper.

### Jury Demand

Plaintiff demands trial by jury on all issues triable by jury.

DATED: October 29, 2013

                                        Respectfully submitted

                                        **/s/Frank F. Owen**
                                        Frank F. Owen, Esq.
                                        Florida Bar No. 702188
                                        FFO@CastlePalms.com
                                        Frank F. Owen & Associates, P.A.
                                        1091 Ibis Avenue
                                        Miami Springs, Florida 33166
                                        Tel:  (954) 964-8000

                                        and

                                        **/s/Joel S. Magolnick**
                                        Joel S. Magolnick
                                        Florida Bar No. 776068
                                        magolnick@mm-pa.com
                                        Marko & Magolnick, P.A.
                                        3001 SW 3rd Ave.
                                        Miami, Florida 33129
                                        Tel:  (305) 285-2000

                                        Attorneys for Plaintiff Pines Nursing Home (77),
                                        Inc., d/b/a/ Pines Nursing Home, and all others
                                        similarly situated

**EXHIBIT "1"**

## PharMerica cordially invites you to join us for

## PharMerica Education Symposia & Exhibition Series

*6 hours of CE Credit available for nursing and nursing home administrators*

### Renaissance Boca Raton

2000 NW 19 Street, Boca Raton, FL 33431
Guest Room Rate: $169 p/night
Please call 1-800-321-0472 and ask for the PharMerica group rate to make reservations.

### Wednesday, March 16th | 7:30am – 4:30pm

*Continental breakfast and lunch provided.*

☐ **Yes!** I will attend this program and have enclosed a check for $25.

Cost per attendee is $25 payable to PharMerica.
Complimentary parking provided. **Kindle Give Away!**

You must register in advance. To reserve your space, mail your registration and payment to:
Savannah Sales c/o PharMerica
1901 Campus Place | Louisville, KY | 40299 | Fax (502) 627-7918

**RSVP must be received no later than March 9th.**

*Name _____   *Title _____
*Facility _____
*Address _____
*Phone _____   *Fax _____
*Email _____  *Lic# _____
*Signature _____

*Must provide complete information for registration to be accepted.

*In accordance with the PhRMA Code on Interaction with healthcare professionals, attendance at this education program is limited to healthcare professionals. Accordingly, attendance by guests or spouses is not appropriate.*

For questions about this program, call Savannah Sales, (502) 627-7818
or email her at savannah.sales@pharmerica.com



*Fax Blast #2*

**PharMerica**
Value. Trust. Performance.

www.pharmerica.com

# Agenda for Educational Seminar

## Wednesday, March 16th, 2011

| Time | Activity |
|---|---|
| 6:30am | Vendor set up |
| 7:00-7:30am | Registration |
| 7:00-8:00am | Light breakfast, Vendor Interaction |
| 8:00-9:00am | Opening Remarks, Educational Program - TBD |
| 9:00-10:15am | Educational CE Program – "Falls Prevention" – Richard Stefanacci, DO, MGA, MBA, AGSF, CMD |
| 10:15-10:30am | Break and vendor interaction |
| 10:30-11:45am | Educational CE Program – "Medication Errors with a Focus on Insulin" – Jonathan G. Marquess – PharmD, CDE, CPT |
| 11:45-12:30pm | Lunch and Educational Program - TBD |
| 12:30-1:30pm | Vendor Interaction |
| 1:30-2:45pm | Educational CE Program – "MDS 3.0 Section M Skin Conditions" – Elizabeth Ayello, PhD, RN |
| 2:45-3:00pm | Break |
| 3:00-4:30pm | Educational CE Program – "Pain Management: Older Adults in Long-Term Care" – Dr. Michael Gloth, MD, FACP, AGSF |
| Conclusion | Thank you for joining us. Have a great evening. |

*Thank you for joining us. Have a great evening.*



PharMerica
Value. Trust. Performance.
www.pharmerica.com