UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  13-23924-CIV-MOORE/MCALILEY

Pines Nursing Home (77), Inc.,                                          CLASS ACTION

        Plaintiff,

v.

PharMerica Corporation,

        Defendant.
_____/

**Joint Motion and Memorandum of Law for Final Approval of Settlement**

Plaintiff Pines Nursing Home (77), Inc. d/b/a/ Pines Nursing Home ("Pines"), and Defendant PharMerica Corporation ("PharMerica") jointly ask this Honorable Court to enter an order: (1) giving final approval of the settlement memorialized in the parties' Class Action Settlement Agreement;[1] (2) certifying the Settlement Class; (3) designating Pines as Class Representative; (4) appointing of Pines' attorneys as Class Counsel; and (5) appointing of Heffler Claims as the Settlement Administrator. This Motion is unopposed by any class member; no objections were filed by any of them and none requested exclusion from the Settlement Class.

## Introduction

Following intense and hard-fought litigation, Pines and PharMerica entered into a comprehensive settlement of this class case brought under the Telephone Consumer Protection Act of 1991, 47 U.S.C.A. § 227 (West 2014) ("TCPA" or the "Act"). The settlement makes available up to $15 million to recipients of PharMerica "symposia faxes," confirms changes to PharMerica's faxing practices resulting from this litigation and requires PharMerica to conduct training to foster future compliance with the Act.

In June 2015, the Court entered an Order preliminarily approving the settlement, certifying the settlement class, appointing Pines as Class Representative, appointing Pines' attorneys as Class Counsel, and appointing Heffler Claims as the Settlement Administrator, directing the giving of notice of the settlement to the class, and setting November 12, 2015 as the date for the final approval hearing. (ECF No. 96.)

Following preliminary approval, Heffler executed the class notice plan approved by the Court. Class notice was successfully sent by mail and fax, or re-mailed, to 96 percent of class members. (Declaration of Settlement Administrator James R. Prutsman ("Prutsman Decl.") ¶¶ 4-11.) This was supplemented by a website (www.pmfaxsettlement.com), at which class members could view and download numerous documents about the lawsuit and the settlement and even submit a claim form online. (*Id.* ¶¶ 14-15.)

---

[1] A copy of the Class Action Settlement Agreement ("CASA" for short) was submitted concurrently with the motion for preliminary approval. (*See* ECF No. 89-1.)

Based on preliminary calculations, class members with approved claims will be paid $300 per each fax transmission and will receive an average payment of nearly $2,000 per unique fax telephone number. (Prutsman Decl. ¶¶ 25-26.) Not surprisingly, the class's reaction to the settlement has been positive. None of the 11,000-plus class members objected to the settlement. (*Id*. ¶ 28.) Likewise, no class members requested exclusion from the settlement class. (*Id*. ¶ 27; ECF No. 100.) This lack of opposition is particularly significant in this case given that the class largely consists of long-term care facilities, sophisticated businesses that reasonably , can be expected to evaluate the benefits made available to them and to object or opt-out of a settlement that they considered less than adequate.

The parties respectfully submit that the Court should give its final approval to the settlement. An agreed upon form of Judgment and Order will be lodged with the Court.

## Argument

### I. The Implemented Notice Plan Satisfies Rule 23(e) and Due Process

Rule 23 requires that the class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(e); *accord Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Neither Rule 23(e) nor due process require that every class member receive actual notice, as long as the court selected a means likely to apprise interested parties. *See* Herbert B. Newberg and Alba Conte, Newberg on Class Actions, § 11:53 (4th ed. 2002). As one court put it, "[D]ue Process does not require perfection." *In re Prudential Ins. Co. Sales Pracs. Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997). The notice plan here easily satisfied Rule 23(e) and due process.

#### A. The "Notice Plan" Was Designed to and Did Reach a High Percentage of the Class

The "Notice Plan", as it is referred to in the CASA, was designed to reach a high percentage of class members. (CASA ¶¶ 4.1-4.2.) On July 17, 2015, over 11,000 postcard notices were sent via first class mail by Heffler to all class member addresses obtained from PharMerica's own database or through address searches conducted by Heffler, with all addresses "updated" using the U.S. Post Office's National Change of Address system. (Prutsman Decl. ¶¶

2

4-6, Ex. A.)  The same day, notice was faxed by Heffler to class members for whom Heffler had no physical mailing address.  (*Id.* ¶ 7, Ex. B.)  For those notices that were returned by the Postal Service, notices were re-mailed using additional addresses obtained from forwarding addresses provided by the Postal Service, or from further searches conducted by Heffler.  (*Id.* ¶¶ 8-9.)

All told, Heffler successfully mailed, faxed or re-mailed notices to approximately 96 percent of the potential class—an outstanding result, considering that the faxes at issue were sent as early as October 29, 2009.  (Prutsman Decl. ¶ 11.)

Moreover, notice informed class members that they could obtain additional information by, among other things, contacting Heffler via a toll-free telephone number.  (Prutsman Decl. ¶ 13 [370 calls fielded by Heffler].)  Class members seeking additional information were also directed to the website created for the settlement (www.pmfaxsettlement.com), operational at all times since July 16, 2015.  (*Id*. ¶¶ 14-15 [describing the information contained on the website and Ex. E [the FAQ's pages contained on the website].)  In addition, the website contained a "long form" class notice and claim form. (*Id.*  ¶ 15,  Ex. C [long form notice ] and Ex. D [claim form].)  (Indeed, the website permitted class members to submit claim forms online; *Id. ¶* 2.)  The website saw regular usage. (*Id.*  ¶ 17 [there have been 5,601 "visits" to the website].)

Further, Class Counsel commissioned a telephone and email outreach program to class members pursuant to which over 14,000 calls were made, speaking to a live person on nearly 5,000 occasions and leaving almost 5,300 recorded messages.  (Declaration of Outreach Supervisor Jay Geraci ("Geraci Decl.") ¶¶ 3-4.)  The number of claims submitted substantially increased after the commencement of the outreach program.  (Prutsman Decl. ¶ 22.)

In addition, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b), PharMerica provided notice of the settlement, including required court documents, to the Attorneys General (or other appropriate officials) of each state, commonwealth and territory.  (ECF No. 94 [Notice of Compliance].)

### B. The Class Notice Provided Thorough Information to Class Members

The Class Notice gave class members all the information they needed to evaluate the settlement.  (Prutsman Decl. Ex. A [postcard] and Ex. B [fax version of notice].)  The notice

3

informed class members in plain English about, among other things: (1) the Court's preliminary certification of a settlement class and approval of settlement; (2) the nature of the lawsuit; (3) a description of the settlement class; (4) the essential terms of settlement; (5) how members' individual payment amounts would be calculated, and that they would be entitled to at least $156.64 per fax transmission, if they submitted a timely and valid claim;; (6) that class members did not need to have retained copies of faxes in order to make a claim; (7) the maximum amounts that could be sought as attorneys' fees/costs and incentive award; (8) all options available to class members, including submitting a claim, requesting exclusion from the settlement and objecting, and the deadlines for exercising these options; and (9) the date of the final approval hearing.  The notice also informed members as to how to obtain additional information by visiting the settlement website (pmfaxsettlement.com) or by calling Heffler at a toll-free telephone number.

By visiting the settlement website, members have been able to access and download: (1) a more detailed notice of the settlement (Prutsman Decl. Ex. C); (2) the Claim Form (*Id.* Ex. D); (3) a complete copy of the Settlement Agreement; (4) the operative complaint; (5) the motion for preliminary approval (and all supporting documents); and (6) the Court's preliminary approval order.  The website contained a Frequently Asked Questions section, designed to respond to the most common inquiries.  (Prutsman Decl. ¶ 16, Ex. E.)

The claim form was designed for ease of completion and processing.  (Prutsman Decl. Ex. D.)  It is only one page and easy to read, and required relatively little information from class members.  In order to make a claim, class members needed only to provide their fax number(s) and their names and sign the form.  Class members did not need to demonstrate proof of receipt of a fax because sufficient records of transmission were produced in the case.  Class members were also given 90 days to submit a claim.  Even those members who erred in completing their claim forms were given a "second chance" under the settlement by being allowed to cure denials of their claims.  (*Id.* ¶ 3; CASA ¶¶ 1.8, 5.3.)[2]  Indeed, armed with all of the information provided

---

[2] As provided in CASA ¶¶ 1.8 and 5.3, a small number of claims were not submitted by the claims submission deadline (October 15, 2015) and were denied as untimely. (Prutsman Decl. ¶ 19.) Class members were also warned on the Class Notices and on the settlement website about the requirement that claim forms needed to be submitted by October 15, 2015. (*Id*. ¶ 16, Exs. A and B.)

by the Class Notice, and the easy-to-complete Claim Form, the settlement has been positively received by the class, as discussed below.

Because the parties have fully complied with the approved Notice Plan, the parties respectfully submit that the Court should affirm its finding at preliminary approval that the forms and methods of notice "compl[y] with Fed. R. Civ. P. 23(e) and due process [and constitute] the best notice practicable under the circumstances."

## II.     The Class Reacts Favorably to the Settlement

### A.     There Have Been No Objections

No class members objected to the settlement or any aspect of the settlement, including attorneys' fees/costs or the incentive award requested in amounts disclosed in the Class Notices. The deadline for making objections (October 8, 2015) passed almost a month ago. (Prutsman Decl. ¶ 28.)  Courts in this district have repeatedly found that "[a] low percentage of objections will confirm the reasonableness of a settlement and support its approval." *Encarnacion v. JW Lee, Inc.*, No. 14-CIV-61927-DIMITROULEAS, at *4 (S.D. Fla. Oct. 22, 2015) (quoting *Francisco v. Numismatic Guar. Corp.*, No. 06-61677-CIV, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008)).

### B.     There Have Been No Requests for Exclusion

No class members requested exclusion from the settlement class.  (ECF No. 100.)  The deadline for requesting exclusion (September 15, 2015) has passed.  (Prutsman Decl. ¶ 27.)

### C.     Claims Submission

To date, 1,125 timely Claim Forms have been received by Heffler, resulting in 409 timely and valid claims. (Prutsman Decl. ¶¶ 19-20.)  The claims rate was aided by the telephone and email outreach program organized and implemented by Class Counsel in which more than 14,000 calls were made. (Geraci Decl. ¶ 4.)  About 90 percent of timely Claim Forms were submitted after the commencement of the outreach program. (Prutsman Decl. ¶ 22.)  Timely and

valid claims represent 4 percent of the total fax transmissions that are the subject of the settlement. (*Id.* ¶ 24.)

### D. Class Members Have Expressed Strong Support for the Settlement

Class members have come forth with declarations expressing strong support for the settlement. (*See* Declaration of Vilma Martinez (Avanté Group) ¶ 4; Declaration of Joshua Sable (Windsor) ¶ 4) These class members, all of whom operate long-term care facilities or systems, contend that they did not consent to receive the fax communications at issue from PharMerica, and support the settlement. (Martinez Decl. ¶ 3; Sable Decl. ¶ 3) They strongly support the settlement consideration, particularly because they didn't keep PharMerica's faxes or other records of their receipt. (*See* Martinez Decl. ¶¶ 3-4; Sable Decl. ¶¶ 3-4)

## III. The Court Should Grant Final Approval to the Settlement

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. In reviewing a proposed class settlement, courts should be mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) . The policy favoring settlement is especially strong in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("public policy strongly favors the pretrial settlement of class action lawsuits"); *see also Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (citations omitted), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

### A. The Guidelines for Final Approval of Class Settlements

A proposed class settlement should be approved if the Court, after allowing absent class members the opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a settlement is fair, reasonable and adequate, courts in this Circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration

of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which settlement was achieved." *Bennett*, 737 F.2d at 986.

### B.    All Standards Support Final Approval

#### 1.    Likelihood of success of class claims

This was a case in which PharMerica diligently contested liability.  The brief in support of preliminary approval discussed in depth the potential litigation risks faced by the class if the case had not settled.  (*See* ECF No. 89 at 19-21.)  While Pines believes it would have defeated PharMerica's arguments, nothing in litigation is certain and there was the risk that, among other things, PharMerica would have been able to successfully argue that its faxes were not advertisements within the scope of the TCPA.  This argument, if it had been accepted, would have defeated Pines' and the class' claims in their entirety.

Class certification presented additional risks, particularly if PharMerica successfully asserted its permission-based defenses.  PharMerica argued that its customers had consented to facsimile communications in their respective customer contracts.  Class certification has been denied where the defendant showed that individualized inquiries surrounding permission precluded certification (*Chapman v. First Index, Inc.*, No. 1:09-cv-05555, 2014 WL 840565, at *3 (N.D. Ill. Mar. 4, 2014), *aff'd in relevant part, rev'd on other grounds*, 796 F.3d 783 (7th Cir. 2015)), and the court "would have to engage in a class-member-specific inquiry to determine whether each recipient" gave permission (*G.M. Sign, Inc. v. Brinks Mfg. Co*., No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011)).  Other courts have declined to certify TCPA classes on the ground that a class action is not a superior method of resolving the case.  *See, e.g., Landsman & Funk, P.C. v. Lorman Bus. Ctr.*, No. 08-cv-481-bbc, 2009 WL 602019, at *9 (W.D. Wis. Mar. 9, 2009).  Pines believes that certification would have been granted, but the risk of non-certification nevertheless was appropriately factored into the settlement equation.

#### 2.    The proposed settlement is well within the range at which a settlement is fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for

7

the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

"A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable." *Malta v. Federal Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN(NLS), 2013 WL 444619, at *6 (S.D. Cal. Feb. 5, 2013). Instead, there is a range of reasonableness in determining whether to approve a settlement that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1974)). Courts have determined that settlements may be reasonable even where plaintiffs recover "only a fraction of the potential recovery." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The proposed overall $15 million settlement measures well against any standard. (Declaration of Co-Lead Class Counsel Scott Z. Zimmermann ("Zimmermann Decl.") ¶ 12.) Based on preliminary calculations, Heffler reports that class members with approved claims will be paid $300 per each fax transmission, an amount equal to 60 percent of the statutory damages available under the TCPA, net of attorneys' fees/costs and administration costs. (Prutsman Decl. ¶ 25.)[3] The average payment to class members will be almost $2,000 per unique fax number. (*Id.* ¶ 26.) The settlement also confirms that this litigation has caused PharMerica to change its facsimile communication practices in an effort to ensure full compliance with the TCPA. In addition, PharMerica will provide TCPA training to employees who will engage in mass faxing activities. (CASA ¶ 2.2.)

---

[3] *See* 47 U.S.C. § 227 (b)(3). This is aside from the possibility of the discretionary enhancement of statutory damages up to three times in the event of "willful" or "knowing" violations of the Act. *Id.*

8

### 3. Complexity, expense and duration of litigation

Had this case not settled, litigation would have continued for years. PharMerica and its experienced legal team have proved to be able and diligent in defending the claims. If, as Pines expected, the Court would have certified the class, PharMerica almost certainly would have sought immediate appellate review under Rule 23(f). *See King Architectural Metals*, 637 F.3d at 722-23 (granting interlocutory review of TCPA class certification order). A detour to the Eleventh Circuit would have delayed class relief for a year or more. Even after the eventual trial, any recovery could be delayed for perhaps years by yet another appeal. *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

### 4. There is strong class support for the settlement

The lack of objectors challenging the settlement favors a finding that the settlement is "fair and reasonable," *American Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002), and is "strong circumstantial evidence in favor of the settlement." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000), *aff'd*, 267 F.3d 743 (7th Cir. 2001). Likewise supporting the settlement is that no class member requested exclusion from the settlement class.[4]

### 5. Stage of the proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324; *see also Francisco*, 2008 WL 649124, at *11 ("Class Counsel had sufficient information to

---

[4] As discussed earlier (p. 3, *supra*), PharMerica provided notice of the settlement to the appropriate state and federal officials, as required by CAFA. None of these governmental entities opposed or commented upon the settlement. "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV-08-1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010).

9

adequately evaluate the merits of the case" where counsel conducted two depositions and obtained "thousands" of pages of documents). Here, Pines and Class Counsel have a clear understanding of the case and painstakingly probed virtually all aspects of PharMerica's fax communication program through extensive document discovery (of the equivalent of four million pages) and the course of three targeted depositions.

Further, courts are "'entitled to rely heavily on the opinion of competent counsel… .'" regarding settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325). Class counsel have prosecuted numerous TCPA class claims and are experienced in the issues and potential defenses. They strongly recommend the proposed settlement because it ensures substantial compensation to the class instead of protracted and uncertain litigation. (*See* Declaration of Co-Lead Class Counsel C. Darryl Cordero ¶ 6; Zimmermann Decl. ¶ 17.) And where, as here, the settlement is the product of mediation, there is an additional presumption in favor of settlement. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007). The parties engaged in a protracted, difficult mediation process before a leading mediator, Rodney Max, who conducted three all-day in-person sessions in as many cities and numerous telephone conferences. (Declaration of Mediator Rodney A. Max ¶¶ 1-4, filed as ECF No. 91.)[5]

### IV. Certification of the Settlement Class Is Appropriate

In its preliminary approval order, the Court conditionally certified a settlement class of subscribers of telephone numbers to which PharMerica transmitted one or more of the 110 Symposia Faxes (as defined in the CASA) unearthed during discovery. (ECF No. 96, ¶ 5.) As noted in the motion for preliminary approval, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present

---

[5] Mr. Max's declaration confirms that at the request of class counsel, the amount of fees and expenses under the settlement agreement was not negotiated until the third and final in-person mediation, after the parties had reached agreement on all other material settlement terms. (*Id.* ¶ 4.) S*ee Lee v. Ocwen Loan Servicing, LLC,* No. 14-CV-60649, 2015 WL 5449813, at *12 (S.D. Fla. Sept. 14, 2015) (negotiation of fees after other settlement terms demonstrates absence of collusion); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721, 2014 WL 5488167, at *4 (S.D. Fla. Oct. 29, 2014) (same).

intractable management problems…for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The same considerations that supported this order now warrant final certification. This is a large but cohesive class of over 11,000 Symposia Fax recipients. The class is finite, precise, and ascertainable, and for purposes of settlement, class status can be objectively determined from records produced in the case (and the members' certification in their claim forms that they were the subscribers of the relevant telephone numbers). Class members were similarly impacted by PharMerica's common faxing practices. Pines and class counsel more than adequately represented the class as evident by their efforts and the results that have been achieved. Further, class treatment for purposes of settlement is far superior to individualized adjudication.[6]

## Conclusion

The parties request that the Court grant final approval to the settlement and give final certification of the Settlement Class in the form Judgment and Order jointly proposed by the parties.

---

[6] As one district court recently explained: "[I]t is apparent that allowing consumers to bring a class action under the TCPA is a uniquely effective way to protect a population already besieged by unwanted and aggressive solicitations from persons or companies hawking their products. In fact, if the goal of the TCPA is to remove a 'scourge' from our society, it is unlikely that 'individual suits would deter large commercial entities as effectively as aggregated class actions and that individuals would be as motivated—or even more motivated—to sue in the absence of the class action vehicle. [Citation omitted.]" *Jay Clogg Realty Group, Inc. v. Burger King Corp.*, 298 F.R.D. 304, 309 (D. Md. 2014).

11

Dated: November __, 2015

Respectfully submitted,

s/Joel S. Magolnick
Joel Steven Magolnick, Esq.
Fla. Bar No. 776068
Email: magolnick@mm-pa.com
Marko & Magolnick, P.A.
3001 S.W. 3rd Avenue
Miami, FL  33129
Telephone: 305.285.2000
Telecopy: 305.285.5555

Scott Z. Zimmermann, Esq.*
Email: szimm@zkcf.com
Law Offices of Scott Z. Zimmermann
601 S. Figueroa Street
Suite 2610
Los Angeles, CA 90017
Telephone: 213.452.6509
Telecopy: 213.622.2171

C. Darryl Cordero, Esq.*
Email: cdc@paynefears.com
Payne & Fears LLP
801 South Figueroa, Suite 1150
Los Angeles, CA 90017
Telephone:  213.236.9105
Telecopy: 213.439.9922

Frank F. Owen, Esq.
Email: ffo@castlepalms.com
Law Offices of Frank F. Owen & Associates, PA
1091 Ibis Avenue.
Miami Springs, FL 33166
Telephone:  305.984.8915
Telecopy:  305.672.0804


*Admitted Pro Hac Vice (Co-Lead Counsel)*

*Counsel for Plaintiff Pines Nursing Home (77), Inc., individually and on behalf of all other similarly situated*

s/Nancy M. Barnes
Thomas F. Zych, Esq.*
Email: Tom.Zych@ThompsonHine.com
Nancy M. Barnes, Esq.*
Email: Nancy.Barnes@ThompsonHine.com
Matthew D. Ridings, Esq.*
Email: Matt.Ridings@ThompsonHine.com
THOMPSON HINE LLP
3900 Key Center, 127 Public Square
Cleveland, OH 44114-1291
Telephone:  216.566.5500
Telecopy:  216.566.5800

*\*Admitted Pro Hac Vice*

Janet T. Munn, Esq.
Fla. Bar No. 501281
Email: jmunn@rascoklock.com
Rasco Klock, et al.
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, FL  33134
Telephone:  305.476.7101
Telecopy:  305.476.7102


*Counsel for Defendant PharMerica Corporation*

12

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 6th, 2015, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                               /s/Joel S. Magolnick
                                               Joel S. Magolnick